JAMELL WOODS COTTO *v.* BOARD OF EDUCATION OF THE CITY OF NEW HAVEN ET AL.
(SC 18339)

Rogers, C. J., and Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued October 22—officially released December 15, 2009

*Roderick R. Williams*, assistant corporation counsel, for the appellants (named defendant et al.).

*William B. Wynne*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The dispositive issue on appeal is whether the defendants, the board of education of the city of New Haven (city) and certain public school officials in the city,[1] are immune from liability for injuries that the plaintiff, Jamell Woods Cotto, sustained when he slipped on a wet bathroom floor at the Roberto Clemente School (school), one of the city's public schools, while working as a director of a summer youth program at the school. The trial court rendered judgment in favor of the plaintiff on his amended one count complaint alleging that, pursuant to General Statutes § 52-557n,[2]

---

[1] The plaintiff, Jamell Woods Cotto, originally named as defendants: the city; the city's board of education; Reginald Mayo, the superintendent of the city's public schools; and Leroy Williams, the principal of Roberto Clemente School, the city public school where the incident at issue occurred. The trial court, *Licari, J.*, granted the defendants' motion to strike the complaint as against the city. No appeal was taken from that order. References herein to the defendants are to the board of education, Mayo and Williams.

[2] General Statutes § 52-557n (a) provides: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require

the defendants' negligent failure to properly inspect and clean the bathroom floor and to warn people of the wet and slippery conditions had subjected him, as an identifiable individual, to imminent harm, thereby abrogating the defendants' governmental immunity.[3] On appeal, the defendants claim that the trial court improperly found that the plaintiff had proven the defendants' negligence based on their constructive notice of the dangerous condition of the bathroom floor and also improperly concluded that the doctrine of governmental immunity did not apply to shield the defendants from liability for the alleged injuries to the plaintiff. We conclude that the defendants are immune from liability, and, accordingly, we reverse the trial court's judgment.

The record discloses the following facts, which the trier of fact found, and procedural history. In 1999, the plaintiff was a youth director and case manager for Latino Youth Development, Inc. (Latino Youth), which ran a summer program to provide education and recreation to city youth. Approximately sixty children were enrolled in the program, but attendance varied from day to day. Latino Youth paid no rent or fees to the city for the use of the school facilities during the summer program. Although the city provided its own summer programs, it recognized the significance of community

___

the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[3] As we explain subsequently in this opinion, "[t]he immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) *Durrant* v. *Board of Education*, 284 Conn. 91, 95 n.4, 931 A.2d 859 (2007). Only the first exception is at issue in this appeal.

based programs and the benefit of those programs to the city's youth, and, accordingly, the city appreciated the need to maintain and regularly inspect the schools during the summer while the community based summer programs made use of them. This responsibility included regular inspection and maintenance of the bathroom facilities. Staff were maintained on the city's payroll to protect the safety of the children during the summer months while Latino Youth and other summer organizations operated their programs. Latino Youth had the understanding, and received assurances, that the premises would be kept reasonably safe for its use.

On June 16, 1999, at approximately 9:45 a.m., the plaintiff went into one of the bathrooms in the school to look for two program participants, seven and eight years old, respectively, who could not be accounted for after breakfast in the school cafeteria. Upon entering the bathroom, he slipped on water and urine that were on the floor. The plaintiff fell to the floor and sustained injuries.

The plaintiff thereafter filed a complaint alleging negligence. The defendants filed an answer and asserted special defenses alleging that the plaintiff's own negligence had been the proximate cause of his injuries and that common-law and statutory governmental immunity pursuant to § 52-557n shielded them from liability. See General Statutes § 52-557n (a) (2) (B); see also footnote 2 of this opinion. The case was tried to the court, which thereafter issued a memorandum of decision.

On the basis of the aforementioned facts, the trial court determined that the plaintiff, as an employee of Latino Youth charged with the care and supervision of the program attendees, was an invitee of the defendants. Accordingly, quoting from *Baptiste* v. *Better Val-U Supermarket, Inc.*, 262 Conn. 135, 140, 811 A.2d 687 (2002), the trial court concluded that "the defendant[s]

owed the plaintiff a duty to keep [the] premises in a reasonably safe condition . . . [and were] held to the duty of protecting [their] business invitees from known, foreseeable dangers." (Citation omitted; internal quotation marks omitted.)

The court then turned to the issues of notice and failure to warn. The court noted that the plaintiff had testified that, on several occasions, he had complained to a secretary in the school's main office about the bathroom assigned to his program, specifically, that it was frequently dirty with urine on the floor. The court further noted that, although the principal of the school, the defendant Leroy Williams, had testified that he had not received any written complaints and had no memory of having received any oral complaints, he also had acknowledged that the members of the summer staff in the main office were not part of his regular staff. This revelation prompted the trial court to question the adequacy of the reporting system for the summer months, when as many as twenty programs were using school facilities. To this point, the defendants had presented evidence that the custodial crew had been charged with cleaning the bathrooms every night and that Williams personally had inspected the bathrooms each morning at 8 a.m. upon his arrival at the school. The trial court noted, however, that no testimony had provided any information about whether inspections ever revealed that the night crew had failed to do its job and that Williams had no memory of actually having inspected the bathrooms on the morning of the accident. On the basis of the evidence it credited as well as some notable omissions in the evidence, the trial court concluded that the defendants had failed to clean the bathroom adequately the night before the morning of the plaintiff's fall. The court further concluded that the defendants had constructive notice of the dangerous condition because the urine that the plaintiff slipped

on had been on the floor for a sufficient length of time such that the defendants should have discovered it in the exercise of reasonable supervision of the premises.

Finally, the trial court turned to the issue of governmental immunity. It initially concluded that, under the reasoning in several of this court's decisions,[4] the plaintiff did not fit precisely into a cognizable class of foreseeable victims for purposes of satisfying the identifiable person-imminent harm exception to the qualified immunity of a municipal employee for discretionary acts.[5] The court noted that the only identifiable class of foreseeable victims that this court had recognized for purposes of that exception was that of schoolchildren attending public schools during school hours on the ground that they legally were required to attend school and that their parents statutorily were required to relinquish their custody to school officials during those hours. Nevertheless, the trial court determined that the plaintiff was an identifiable individual subject to imminent harm for purposes of the exception to the governmental immunity doctrine. In particular, the court reasoned that the defendants knew that the Latino Youth program involved children, including quite young ones, and that the supervision of the children was a concern in finding a site for the program. It further reasoned that the wet bathroom floor presented an imminent harm and was in a location where the children were likely to go and, in turn, where the program super-

---

[4] The principal cases cited by the trial court were *Durrant* v. *Board of Education*, 284 Conn. 91, 108–10, 931 A.2d 859 (2007); *Prescott* v. *Meriden*, 273 Conn. 759, 764, 873 A.2d 175 (2005); *Purzycki* v. *Fairfield*, 244 Conn. 101, 108, 708 A.2d 937 (1998); and *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994).

[5] The trial court also considered, but rejected, the possibility that the plaintiff could recover under the exception to municipal immunity for certain governmental proprietary acts. See General Statutes § 52-557n (a) (1) (B) (liability for "negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit").

visors were likely to go if children were found to be missing. See footnote 9 of this opinion. Accordingly, the court rendered judgment for the plaintiff and awarded damages in the amount of $59,962.61, to be reduced by 20 percent for the plaintiff's comparative negligence.[6] This appeal followed.[7]

On appeal, the defendants raise two issues: (1) even when viewing all of the evidence in the light most favorable to the plaintiff, the evidence did not "merit a finding of constructive notice [because] it is impossible to rule out that the children who used the bathroom prior to [the] plaintiff's fall created the condition that caused [the] plaintiff's fall"; and (2) the trial court improperly determined that the doctrine of governmental immunity did not shield the defendants from responsibility for the injuries sustained by the plaintiff. Because we agree with the defendants' second claim, we do not address their first issue.

The common-law and statutory doctrines that determine the tort liability of municipal employees are well established. See *Burns* v. *Board of Education*, 228 Conn. 640, 645, 638 A.2d 1 (1994). "Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts.[8] Id. Governmental

---

[6] In light of the plaintiff's complaints about the condition of the bathroom floor on previous occasions, the trial court determined that the damages award should be reduced by 20 percent because the plaintiff had failed to protect himself from a known danger that was or should have been apparent to him.

[7] The defendants appealed from the trial court's judgment to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[8] "Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. . . . The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. . . . Governmental immunity in such cases depends on whether the act in question involves a ministerial or discretionary act. [A] municipal employee . . . has a qualified immunity in the performance of a governmental duty,

acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. *Gauvin* v. *New Haven*, 187 Conn. 180, 184, 445 A.2d 1 (1982). . . . A municipal employee's immunity for the performance of discretionary governmental acts is, however, qualified by three recognized exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. . . . *Burns* v. *Board of Education*, supra, [645]." (Citation omitted; internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 36, 818 A.2d 37 (2003).

The plaintiff acknowledges that the defendants' conduct was discretionary, and, therefore, he can prevail only if he falls within one of the delineated exceptions to governmental immunity. The only relevant exception is that the circumstances would "make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Citations omitted.) *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). "By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Doe* v. *Petersen*, 279 Conn. 607, 616, 903 A.2d 191 (2006). Failure to establish any one of the three prongs will be fatal to a plaintiff's claim that he comes within this exception. Id., 620.

but he may be liable if he misperforms a ministerial act . . . . The word ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Citation omitted; internal quotation marks omitted.) *Durrant* v. *Board of Education*, 284 Conn. 91, 95 n.4, 931 A.2d 859 (2007).

The identifiable person-imminent harm exception applies to narrowly defined classes of foreseeable victims as well as identifiable individuals. *Colon* v. *Board of Education,* 60 Conn. App. 178, 184, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000); see also *Burns* v. *Board of Education,* supra, 228 Conn. 646; *DeConti* v. *McGlone,* 88 Conn. App. 270, 273, 869 A.2d 271, cert. denied, 273 Conn. 940, 875 A.2d 42 (2005); *Gajewski* v. *Pavelo,* 36 Conn. App. 601, 620, 652 A.2d 509 (1994), aff'd, 236 Conn. 27, 670 A.2d 318 (1996). "Thus far, the only identifiable class of foreseeable victims that we have recognized for these purposes is that of schoolchildren attending public schools during school hours. See [*Burns* v. *Board of Education,* supra], 640; see also *Purzycki* v. *Fairfield,* [244 Conn. 101, 110–11, 708 A.2d 937 (1998)] (determining whether there was sufficient evidence of imminent harm to schoolchild). In determining that such schoolchildren were within such a class, we focused on the following facts: they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they were legally required to attend school rather than being there voluntarily; their parents were thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions. *Burns* v. *Board of Education,* supra, [648–50]." *Prescott* v. *Meriden,* 273 Conn. 759, 764, 873 A.2d 175 (2005).

Because the trial court in the present case recognized this limitation on identifiable classes of victims, it turned to the plaintiff's status as an identifiable *individual* for purposes of the exception to the governmental immunity doctrine. In concluding that he qualified as such an individual, the court relied on the plaintiff's supervisory responsibilities to monitor the children enrolled in the program, as delegated through the Latino

Youth program.[9] Although the trial court characterized the plaintiff as an identifiable individual distinct from the broader category of membership in a class of foreseeable victims; *Burns* v. *Board of Education*, supra, 228 Conn. 646 (noting that first exception to governmental immunity doctrine has been *expanded* "to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims"); application of well settled criteria demonstrates that the trial court blurred that distinction in the present case and that the court's determination was thus improper.

An individual may be "identifiable" for purposes of the exception to qualified governmental immunity if the

[9] Specifically, the trial court reasoned: "The school authorities knew these programs involved children, the [member of the board of education] who testified said supervision was one of the concerns that was looked [at] in reviewing program applications to use [the] school for their programs. [The plaintiff] was a supervisor of the program. Very young children were at least part of the Latino Youth program, as noted, the children [the plaintiff] went to look after in the bathroom were seven and eight. It is clear that a supervisor of such young children doing a [head] count in the hallway of a school would have an immediate obligation to look for children found to be missing from the count. An obvious place for [the plaintiff] to first look would be the bathroom assigned by school authorities for use by his program. This is the bathroom of which the court has found [the plaintiff] made complaints as being dirty and covered with urine which presented a danger of causing someone to slip—not only students but supervisors engaged in their supervisory capacity of looking for children whose welfare was committed to them. Entering a bathroom with a wet floor presents a danger of imminent harm to a person entering it and the harm realized itself. And if appropriate supervision were not a concern to school authorities in considering whether to allow a program to use school facilities, why did they consider it? Furthermore, the imminent harm characterization here does not entail placing an unreasonable burden on governmental authorities which is evidently the reason for the requirements—this bathroom was only fifty or sixty feet from the main office of the school on the first floor thereof. Inspection would have been simple, nontime consuming, necessitated by prior complaints, all in the context of [e]nsuring the safety and health of children and those charged with their safety—i.e., the very individuals the school authorities required if the summer programs were to use the school in the summer. In fact the children finished their breakfast around 9:20 [a.m.], were allowed to go to the bathroom, then were let outside to a field apparently for exercise. But the custodian was told to inspect the bathroom at 10 a.m."

harm occurs within a limited temporal and geographical zone, involving a temporary condition. *Purzycki* v. *Fairfield*, supra, 244 Conn. 110; see *Tryon* v. *North Branford*, 58 Conn. App. 702, 710, 755 A.2d 317 (2000) (because harm occurred within framework limited in duration, place and condition, plaintiff was "identifiable person" within meaning of exception). For the harm to be deemed imminent, the potential for harm must be sufficiently immediate. In fact, "the criteria of identifiable person and imminent harm must be evaluated with reference to each other. An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person. See, e.g., *Evon* v. *Andrews*, supra, 211 Conn. 508 (the class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of identifiable persons). . . . For the purposes of the imminent harm exception . . . it is impossible to be an identifiable person in the absence of any corresponding imminent harm." (Internal quotation marks omitted.) *Doe* v. *Petersen*, supra, 279 Conn. 620–21. Indeed, we have found imminent harm only in the clearest cases.

A good example of the application of these principles is *Sestito* v. *Groton*, 178 Conn. 520, 527–28, 423 A.2d 165 (1979). In that case, an on duty police officer observed a group of seven men, including the plaintiff's decedent, in a parking lot outside a bar. Id., 522. Although the officer was aware that one of the men was a known felony suspect, and that the members of the group had been drinking and were engaged in an argument that became physical, he did not intercede until after he heard gunshots fired. Id., 522–23. This court concluded that there was enough evidence to suggest that the police officer had owed a duty to the plaintiff's decedent

and that the doctrine of governmental immunity was not a bar to liability, as a matter of law, because the decedent could have been an identifiable person subject to imminent harm. Id., 528. The potential for harm was sufficiently immediate because it would last only as long as the altercation continued and was sufficiently certain in light of the fact that the police officer was observing a violent interaction involving drunkenness and a known criminal. See id.

*Tryon* v. *North Branford*, supra, 58 Conn. App. 702, also is instructive. In that case, the plaintiff, a firefighter in uniform attending the State Fireman's Convention Parade, was injured by a dog owned by one of the defendants, Rush Turner III, a volunteer firefighter participating in the parade as a member of his fire department. Id., 704. With the permission of his supervisors, Turner had brought his dog along with him to the parade. Id. Prior to the commencement of the parade, Turner and his dog were standing in the staging area for the parade when, just before the plaintiff approached the dog, one of the firefighters in the staging area waved a bagel in front of the dog. Id. Although the dog attempted to jump at the bagel, he was prevented from doing so because Turner had a tight grip on the dog's leash. Id. Thereafter, the plaintiff approached the dog, grabbed its ears, "digging her fingernails tight behind the dog's ears," and pulled and jerked the dog's face toward her own. Id. The dog bit the plaintiff in the nose, causing significant injury. Id. In concluding that the plaintiff was an identifiable person subject to imminent harm, the Appellate Court stated that she was "not a member of the general public attending a parade but a firefighter in uniform in the staging area one block away from the site of the parade when the dog bit her." Id., 710. The court concluded that the harm caused in *Tryon* was not of an unspecified type that could have occurred at any time or place in

the future or to anyone. Id., 717. Indeed, it was an immediate, defined moment within a confined geographical space.

By contrast, in *Shore* v. *Stonington*, 187 Conn. 147, 150, 444 A.2d 1379 (1982), the defendant police officer approached a vehicle that he had observed speeding and being erratically driven, after the operator had stopped in the parking lot of a social club, where he was to pick up his girlfriend. The operator manifested obvious signs of being under the influence of alcohol or drugs. Id., 150–51. The police officer did not arrest the operator, but instead, allowed him to proceed with only a warning that "he had better slow down and . . . let his girlfriend drive." Id., 150. Less than one hour later, the operator struck and killed the plaintiff's decedent. Id., 151. This court concluded, as a matter of law, that the police officer had no reason to know that his failure to arrest the intoxicated operator would subject an identifiable person to imminent harm and thus precluded submission of the claim of negligence to the jury. Id., 154. In deciding that abrogation of discretionary act immunity under the "imminent harm" exception was inappropriate, the court reasoned that the mere fact that the police officer had contact with the operator of the vehicle before the fatal collision did not create a clear and unequivocal duty to act to prevent that collision.[10] Id., 156.

---

[10] The dissenting justice in *Shore* had argued that, contrary to the majority's view, *Sestito* v. *Groton*, supra, 178 Conn. 527–28, should not be read as limiting abrogation to cases in which an injury is caused to an identifiable person. *Shore* v. *Stonington*, supra, 187 Conn. 159 (*Peters, J.*, dissenting). Later, in *Burns* v. *Board of Education*, supra, 228 Conn. 646, this court essentially adopted the dissent's view and expanded the discretionary act exception to municipal immunity to apply to "narrowly defined identified classes of foreseeable victims." We note that, although the *Burns* court cited to *Sestito* v. *Groton*, supra, 527–28, as support for that principle; *Burns* v. *Board of Education*, supra, 646; it is more accurate to characterize *Sestito* as recognizing a group of identifiable individuals.

Similarly, in *Evon* v. *Andrews*, supra, 211 Conn. 505–508, this court relied on the "identifiability" and "imminency" requirements of the test for the exception to the governmental immunity doctrine to conclude that municipal officers could not be liable for their allegedly negligent failure to enforce certain provisions of a municipal housing code vis-à-vis a residential premises where a fatal fire subsequently broke out. The court reasoned that "[t]he risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. The class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of identifiable persons . . . . Furthermore, the [victims of the fire] were not subject to imminent harm. . . . [T]he fire could have occurred at any future time or not at all." (Citations omitted; internal quotation marks omitted.) Id., 508.

As these previously discussed cases demonstrate, the plaintiff in the present case was not an identifiable person subject to imminent harm because the potential for harm was neither sufficiently immediate nor sufficiently certain. If the plaintiff was identifiable as a potential victim of a specific imminent harm, then so was every participant and supervisor in the Latino Youth program who used the bathroom. Although it may have been foreseeable that the plaintiff would go into the bathroom to look for children, the risk of specific harm to him was not sufficiently immediate because any person using the bathroom could have slipped at *any* time. Indeed, exposure to the wet floor of a bathroom used by the sixty enrolled participants in Latino Youth as well as their supervisors, not to mention the participants of the nearly twenty other programs that used the school during the summer months, was by no means limited. In short, the risk of harm was not imminent in terms of its impact on the

plaintiff as a specific identifiable person. On the basis of this evidence, we must conclude that it was not apparent to the defendants that their failure to act would likely subject the plaintiff, as an identifiable person, to imminent harm. Accordingly, the defendants are immune from liability for the plaintiff's injuries.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other justices concurred.