******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

THERESA MASELLI *v.* REGIONAL SCHOOL
DISTRICT NUMBER 10 ET AL.*

Superior Court, Judicial District of Hartford
File No. CV-15-6062402-S

Memorandum filed June 11, 2018

*Proceedings*

Memorandum of decision on defendants' motion to dismiss. *Motion granted.*

*A. Paul Spinella*, for the plaintiff.

*Kevin R. Kratzer* and *Ashley A. Noel*, for the defendants.

*Opinion*

ROBAINA, J.

## FACTS

This action was brought on behalf of Angelina Maselli, a minor, through her mother and next friend, Theresa Maselli, seeking damages for injuries Angelina sustained when she was hit in the face with a ball during soccer practice.[1] The incident took place at Har-Bur Middle School (middle school) in Burlington, where Angelina was a member of the school's soccer team. During the practice, the team engaged in a scrimmage inside the gymnasium, and its coach, Robert Samudosky, participated as a member of one of the teams. At some point during the scrimmage, Samudosky kicked the ball, which then hit Angelina in the face.

On July 13, 2016, the plaintiff filed an amended complaint asserting six claims against the defendants: Regional School District Number 10, which serves the towns of Burlington and Harwinton; its superintendent, Alan Beitman; the middle school's principal, Kenneth Smith; and Samudosky, a gym teacher for the middle school as well as the girls' team soccer coach. Counts one through four are against Samudosky only, and counts five and six are against all defendants. In her amended complaint, the plaintiff alleges the following facts. On October 28, 2013, Angelina was participating in a mandatory soccer practice supervised by Samudosky, and, during the practice, Samudosky violently kicked a soccer ball into Angelina's face. Samudosky did not notify a school nurse, paramedics, or Angelina's parents and, despite the fact that he is not a doctor, conducted an assessment of Angelina and determined that she had not suffered a concussion and allowed her to continue to play. Angelina, however, had suffered a concussion. The defendants failed to inform the plaintiff of Angelina's injury, which delayed her medical diagnosis and treatment.

On August 25, 2017, the defendants moved for summary judgment as to all counts of the plaintiff's complaint on the grounds that (1) the plaintiff's negligence claims are barred by governmental immunity, (2) to the extent governmental immunity does not apply, the plaintiff's negligence claims fail as a matter of law, (3) Samudosky's conduct was not extreme and outrageous, (4) the claim of assault and battery fails as a matter of law, and (5) the recklessness claim fails as a matter of law, and the defendants' conduct did not cause Angelina's injuries. Along with each party's memorandum of law, the court has also received a number of exhibits, including deposition transcripts and affidavits.

## DISCUSSION

Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affi-

davits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 820–21, 116 A.3d 1195 (2015). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Id., 821.

"To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 228, 116 A.3d 297 (2015).

"[S]ummary judgment is appropriate only if a fair and reasonable person could conclude only one way. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence *viewed in the light most favorable to the nonmovant,* the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 815, 830 A.2d 752 (2003). "While [a party's] deposition testimony is not conclusive as a judicial admission; General Statutes § 52-200; it is sufficient to support entry of summary judgment in the absence of contradictory competent affidavits that establish a genuine issue as to a material fact." *Collum* v. *Chapin*, 40 Conn. App. 449, 450 n.2, 671 A.2d 1329 (1996).

# I

## GOVERNMENTAL IMMUNITY

Under the common law, a municipality was generally immune from liability for its tortious acts. *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 47, 881 A.2d 194 (2005). Our Supreme Court has "recognized, however, that governmental immunity may be abrogated by statute." (Internal quotation marks omitted.) Id. General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." "[Section] 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Internal quotation marks omitted.) *Haynes* v. *Middletown*, 314 Conn. 303, 312, 101 A.3d 249 (2014).

There are three exceptions to discretionary act immunity: "(1) the alleged conduct involves malice, wantonness or intent to injure; (2) a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; or (3) the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *St. Pierre* v. *Plainfield*, 326 Conn. 420, 434 n.13, 165 A.3d 148 (2017). The identifiable person-imminent harm exception has three elements: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm . . . . [Our Supreme Court has] stated previously that this exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state. . . . If the [plaintiff fails] to establish any one of the three prongs, this failure will be fatal to [the] claim that [the plaintiff comes] within the imminent harm exception." (Internal quotation marks omitted.) Id., 435.

Our Supreme Court has "held that a party is an identifiable person when he or she is compelled to be somewhere. . . . Accordingly, [t]he only identifiable class of foreseeable victims that [the court has] recognized . . . is that of schoolchildren attending public schools during school hours because: they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they [are] legally required to attend school rather than being there voluntarily;

their parents [are] thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions." (Citation omitted; internal quotation marks omitted.) Id., 436; see also *Strycharz* v. *Cady*, 323 Conn. 548, 575–76, 148 A.3d 1011 (2016) ("[o]ur decisions underscore . . . that whether the plaintiff was compelled to be at the location where the injury occurred remains a paramount consideration in determining whether the plaintiff was an identifiable person or member of a foreseeable class of victims" (internal quotation marks omitted)).

This rule has been narrowly applied outside of the schoolchildren context, and, in fact, our Supreme Court has recognized an identifiable person under this exception only once, in *Sestito* v. *Groton*, 178 Conn. 520, 423 A.2d 165 (1979), and this case has since been limited to its facts because it was decided before the three-pronged imminent harm test was adopted. See *Edgerton* v. *Clinton*, 311 Conn. 217, 240, 86 A.3d 437 (2014). Since then, although our appellate courts have addressed claims that a plaintiff is an identifiable person or member of an identifiable class of foreseeable victims, neither the Supreme Court nor the Appellate Court has broadened the definition. See, e.g., *Grady* v. *Somers*, 294 Conn. 324, 356, 984 A.2d 684 (2009) (permit holder injured at refuse transfer station owned by town was not member of class of identifiable persons despite being paid permit holder and resident of town); *Cotto* v. *Board of Education*, 294 Conn. 265, 279, 984 A.2d 58 (2009) (youth director injured in school bathroom was not identifiable person subject to imminent harm because, if he "was identifiable as a potential victim of a specific imminent harm, then so was every participant and supervisor in the [summer youth] program who used the bathroom"); *Thivierge* v. *Witham*, 150 Conn. App. 769, 780, 93 A.3d 608 (2014) (visitor to dog owner's property who was bitten by dog after municipal officer's alleged failure to enforce restraint order was not identifiable victim because "any number of potential victims could have come into contact with the dog following [the municipal officer's] issuance of the restraint order"); cf. *St. Pierre* v. *Plainfield*, supra, 326 Conn. 437–38.

A

Negligence Claims Against Samudosky

In counts three and four, the plaintiff asserts claims of negligent infliction of emotional distress and negligence, respectively, against Samudosky. The defendants move for summary judgment as to these negligence claims on the ground that they are barred by governmental immunity and that no exception applies. The plaintiff argues that Angelina was an identifiable individual because she was attending a soccer practice

supervised by Samudosky and was standing six feet away from him when he forcefully kicked the ball. A review of the evidence submitted in support of and in opposition to the motion for summary judgment, viewed in a light most favorable to the plaintiff, along with established case law, demonstrates the absence of any genuine issue of material fact that Angelina was not an identified individual.

In a signed and sworn affidavit, Beitman attests that the girls' soccer team is a voluntary extracurricular activity and that practices are held after the mandatory school hours have concluded. Samudosky testified at his deposition that practices run between 3 and 5 p.m. and that school academic courses never go past 3 p.m. Angelina testified at her deposition that you have to try out to be on the girls' soccer team, that you are not required to be on the team and that she chose to be on the soccer team. She further testified that soccer practice began once your last academic class finished, between 2:45 p.m. and 3 p.m. The plaintiff attempts to frame Angelina's participation as involuntary by describing the practices as mandatory. The plaintiff attests in a signed and sworn affidavit that practices were a mandatory event and that players were told: "If you don't come to practice, you don't play." This argument fails to comprehend the key reason why schoolchildren were found to be a foreseeable class— because they are statutorily required to attend school— and has previously been rejected.

In *Jahn* v. *Board of Education*, 152 Conn. App. 652, 99 A.3d 1230 (2014), the plaintiff high school student argued that there was an issue of fact as to whether his participation in the swim team was voluntary because he attested in his affidavit that the warm-up drill was mandatory. Id., 667. The court rejected this argument, stating: "[W]hile it may be true that the plaintiff was 'required' to participate in the warm-up drill if he also desired to participate in the swim meet, the fact remains that nothing required the plaintiff to participate in the swim meet or, for that matter, the swim team, in the first place. The plaintiff chose to participate in the swim team when he joined it. He has not argued that any statute or other source of law compelled him to join the team or to participate in the warm-up drill." Id. The Appellate Court thus found that the plaintiff did not qualify as a member of an identifiable class of schoolchildren. Id., 667–68.

Similarly, a student playing in a pickup basketball game during a senior class picnic did not qualify as an identifiable person. See *Costa* v. *Board of Education*, 175 Conn. App. 402, 408–409, 167 A.3d 1152, cert. denied, 327 Conn. 961, 172 A.3d 801 (2017). In *Costa*, the court stated: "Here, it is undisputed that [the plaintiff] was not required to attend the senior picnic, but did so voluntarily. He also voluntarily participated in the

pickup basketball game in which he was injured. We agree with the trial court that [the plaintiff's] voluntary participation did not grant him the status of an identifiable person entitled to protection by school authorities." Id., 409. In a case outside the school context, our Supreme Court has also recently reaffirmed the principle that one whose presence and/or participation is voluntary and not compelled by statute or other law, is not an identifiable person. See *St. Pierre* v. *Plainfield*, supra, 326 Conn. 424, 432, 438. "In the present case, the plaintiff was in no way compelled to attend the aqua therapy sessions provided by (the rehabilitation center). Instead, he voluntarily decided to use (the center's) services. Under established case law, this choice precludes us from holding that the plaintiff was an identifiable person or a member of an identifiable class of persons." Id.

Just like the plaintiffs in the previously discussed cases, Angelina voluntarily chose to participate in the soccer team. She was not required to be on the team and, in fact, students had to try out in order to make the team. As in *Jahn*, the mere fact that participation in practices may have been mandatory does not negate that, overall, participation in the soccer team was voluntary. See *Jahn* v. *Board of Education*, supra, 152 Conn. App. 667. Angelina chose to participate in the soccer team, just like the plaintiff in *Jahn* chose to participate in the swim team and [the plaintiff in *Costa*] chose to attend the senior picnic and participate in the pickup basketball game. Accordingly, Angelina is not an identified person for purposes of the exception. Further, even if Angelina was considered identifiable in the sense that Samudosky knew her identity and of her presence at practice, she would still not be an identifiable person for purposes of the exception. The evidence establishes that Samudosky was looking down at the ball when he kicked it, and, therefore, any girl on the opposing team could have been hit by the ball. See, e.g., *Cotto* v. *Board of Education*, supra, 294 Conn. 279 (determining that director of youth program was not identifiable victim when he slipped in wet bathroom because "any person using the bathroom could have slipped at any time" (emphasis omitted)). Because the failure to establish any one of the prongs for the exception is fatal to a plaintiff's claim that they fall within it, the negligence claims against Samudosky are barred by governmental immunity.

### B

### Negligence Against All Defendants

In count five, the plaintiff alleges negligence against all of the defendants, based on the response to the incident, such as their failure to immediately inform her of Angelina's injury and their failure to adequately address Angelina's educational needs. The plaintiff again does not contest the discretionary nature of the

defendants' duties but argues that Angelina falls within the identifiable victim-imminent harm exception. The defendants argue that Angelina was not subject to imminent harm because, at the time of the alleged action and/or inaction, harm to Angelina had already occurred. Additionally, as the injury occurred during a routine soccer practice and was one that is an inherent consequence, it was not apparent to the defendants that a failure to immediately ascertain what had occurred would subject Angelina to imminent harm. The plaintiff frames the dangerous condition as an undiagnosed head injury and that Angelina faced the imminent harm of a failure to diagnose, treat, and mitigate the effects of her concussion.

"[T]he proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." (Internal quotation marks omitted.) *Martinez* v. *New Haven*, 328 Conn. 1, 9, 176 A.3d 531 (2018). The focus is on "the *magnitude of the risk* that the condition created"; (emphasis in original) *Haynes* v. *Middletown*, supra, 314 Conn. 322; rather than "the *duration* of the alleged dangerous condition . . . ." (Emphasis in original.) Id. As for the apparentness prong, "to meet the apparentness requirement, the plaintiff must show that the circumstances would have made the government agent aware that his or her acts or omissions would likely have subjected the victim to imminent harm. . . . This is an objective test pursuant to which [courts] consider the information available to the government agent at the time of her discretionary act or omission." (Citation omitted.) *Edgerton* v. *Clinton*, supra, 311 Conn. 231.

On the basis of the summary judgment record, Angelina cannot be said to have been subject to an imminent harm that was apparent to the defendants. Soccer is a contact sport; see *Jaworski* v. *Kiernan*, 241 Conn. 399, 406–407, 696 A.2d 332 (1997); and a player getting hit by a ball, even in the face, whether during a practice scrimmage or an actual game, is a not so uncommon of a risk. In the present case, Angelina briefly had a bloody nose and felt dizzy. She had a headache, about which she told Samudosky; however, she did not ask to sit out the rest of practice and was able to walk from the indoor gym to the field outside. Under these circumstances, it could not have been apparent to the defendants that Angelina had suffered a concussion or that a failure to immediately contact the plaintiff would subject Angelina to the imminent harm of exacerbated postconcussion symptoms.

As to the plaintiff's allegations regarding Angelina's exacerbated postconcussion symptoms and diminished academic performance, Angelina's having to repeat the

seventh grade was far too attenuated from the incident and the defendants' alleged conduct to be considered imminent. See *Brooks* v. *Powers*, 328 Conn. 256, 274, 178 A.3d 366 (2018) ("[decedent's] drowning was too attenuated from the risk of harm created by the defendants' conduct for a jury reasonably to conclude that it was imminent"). A jury could not reasonably conclude that the defendants, in failing to inform the plaintiff of Angelina's being hit with a ball or to investigate the incident, ignored a risk that Angelina would have to repeat an entire year of schooling. As neither the imminent nor apparentness prong can be met, Angelina does not fall within the identifiable victim-imminent harm exception and, therefore, the negligence claim in count five is barred by governmental immunity.

## II

## INTENTIONAL TORTS

### A

### Assault and Battery

"A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another. 1 Restatement (Second), Torts [§ 21 [1965]." *DeWitt* v. *John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594, 501 A.2d 768 (1985). "[A]ctual, physical contact (technically defined as 'battery') is not necessary to prove civil assault"; *McInerney* v. *Polymer Resources, LTD*, Superior Court, judicial district of New Britain, Docket No. CV-11-6012308-S (October 22, 2012) (*Swienton, J.*) (54 Conn. L. Rptr. 873, 874); and, thus, "[i]t is more technically correct in Connecticut civil tort law to refer to what is commonly called an 'assault' as a 'battery.' However, the cases rarely make that distinction." *Carragher* v. *DiPace*, Docket No. CV-10-6014357-S, 2012 WL 6743563, *4 (Conn. Super. November 30, 2012) (*Wahla, J.*).

"An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." (Internal quotation marks omitted.) *Alteiri* v. *Colasso*, 168 Conn. 329, 334 n.3, 362 A.2d 798 (1975), quoting 1 Restatement (Second), supra, § 13. "[A]n actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." (Internal quotation marks omitted.) *Markey* v. *Santangelo*, 195 Conn. 76, 78, 485 A.2d 1305 (1985). Intentional conduct is, therefore, not always required for assault and battery; see *Clinch* v. *Generali-U.S. Branch*, 110 Conn. App. 29, 40, 954 A.2d 223 (2008), aff'd, 293 Conn. 774, 980 A.2d 313 (2009); nevertheless, on the basis of the allegations in the plaintiff's amended

complaint, count one is properly construed as a claim of intentional and/or reckless and wanton assault and battery. Thus, the defendants' motion for summary judgment will be evaluated against these two theories.

1

Intentional

"A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances." (Internal quotation marks omitted.) *Markey* v. *Santangelo*, supra, 195 Conn. 78. "[T]hat the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved" is insufficient to constitute a wilful or malicious injury; instead, "[n]ot only the action producing the injury but the resulting injury must be intentional." (Internal quotation marks omitted.) *Alteiri* v. *Colasso*, supra, 168 Conn. 333. "It is not necessary that the precise injury that occurred be the one intended, so long as the injury was the direct and natural consequences of the intended act." *American National Fire Ins. Co.* v. *Schuss*, 221 Conn. 768, 779, 607 A.2d 418 (1992).[2]

The defendants argue that there is no genuine issue of material fact that Samudosky did not intend to injure Angelina and, therefore, the plaintiff's claim of intentional assault and battery fails as a matter of law.

It is undisputed that Angelina's injury took place during a scrimmage, or a simulated game; see Merriam-Webster's Collegiate Dictionary (11th Ed. 2003); where she and Samudosky were on opposing teams. Angelina Deposition, p. 35, ll. 5–13. Prior to Angelina's being hit with the ball, Samudosky had the ball and was defending his end, while Angelina and her team moved up to challenge, with her in the lead. She and her teammates were about six feet away and, although she was facing him, he was looking down when he kicked the ball, which then hit her in the face. The plaintiff asserts that there is an issue of fact as to intent because Samudosky and Angelina were facing each other when he kicked the ball as hard as he could. Angelina, however, repeatedly testified that Samudosky was looking down at the ball when he kicked it and that he kicked it with a lot of force because he was trying to clear it. She stated that, because he was in a defensive position, he would have wanted to get the ball away from his goal, upon which Angelina and the other girls on her team were advancing. Finally, she testified that she did not believe he kicked the ball at her on purpose or intended to hit her with the ball.

On the basis of the foregoing, no fair and reasonable jury could find that in kicking the ball, Samudosky intended to hit Angelina with the ball or injure her. The plaintiff asserts that there is a factual dispute because

Samudosky testified at his deposition that he does not recall who kicked the ball that hit Angelina. This does not raise a genuine issue of material fact because not only the act producing the injury but the injury itself must be intentional. See *Markey* v. *Santangelo*, supra, 195 Conn. 77; *Alteiri* v. *Colasso*, supra, 168 Conn. 333. Thus, even viewing the evidence in a light most favorable to the plaintiff and taking as true that Samudosky did in fact intentionally kick the ball, the record does not support a conclusion that his purpose in kicking the ball was to hit and injure Angelina. In the midst of a scrimmage, Samudosky kicked the ball hard, away from his team's goal, as players on the opposing team, including Angelina, were moving up to challenge. He looked down at the ball to kick it, while those players, including Angelina, were advancing, with Angela in the lead, kicked the ball, and she was hit in the face. The only rational inference a fact finder could make is that which Angelina herself made: that he was trying to clear the ball, i.e., get the ball away from the goal and from the members of the opposing team, including Angelina. The injury suffered by Angelina was not by intentional design; the only reasonable and logical conclusion that a jury could reach is that this was a simple accident, an inherent part of a contact sport. See *Jaworski* v. *Kiernan*, supra, 241 Conn. 406–407. Accordingly, there is no genuine issue of material fact that Samudosky did not commit an intentional assault and battery as a matter of law.

## 2

### Reckless and Wanton

"Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." (Citation omitted; internal quotation marks omitted.) *Markey* v. *Santangelo*, supra, 195 Conn. 78. Thus, "[a] wanton assault and battery is one that under circumstances, evinces a reckless disregard of the consequence of the assaultive act." *Carragher* v. *DiPace*, supra, 2012 WL 6743563, *5. "[Reckless] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Northrup* v. *Witkowski*, 175 Conn. App. 223, 248, 167 A.3d 443, cert. granted on other grounds, 327 Conn. 971, 173 A.3d 392 (2017).

In the present case, a fair and reasonable jury could not conclude that a middle school soccer coach participating in a scrimmage with his players involved a situation of such a high degree of danger, such that the decision to participate would constitute highly unreasonable conduct. See id., 250. The possibility of being hit in the face with a ball exists as a part of soccer, regardless of who is participating, and, thus, Samu-

dosky's participation could not be found to have created an unreasonable risk of bodily harm. See *Carragher* v. *DiPace*, supra, 2012 WL 6743563, *8. Finally, the fact that Samudosky kicked the ball with a lot of power, possibly too hard, cannot reasonably be characterized as anything more than mere thoughtlessness or inadvertence, which, as a matter of law, is not reckless conduct. See *Northrup* v. *Witkowski*, supra, 175 Conn. App. 248. Accordingly, there is no genuine issue of material fact that Samudosky did not commit a wanton and reckless assault and battery.

Samudosky is therefore entitled to judgment as a matter of law as to the assault and battery claim in count one.

B

Intentional Infliction of Emotional Distress

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Citations omitted; internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . ." (Internal quotation marks omitted.) *Geiger* v. *Carey*, Superior Court, judicial district of Litchfield, Docket No. CV-11-5007327-S (February 25, 2015) (reprinted at 170 Conn. App. 462, 497, 154 A.3d 1119), aff'd, 170 Conn. 459, 154 A.3d 1093 (2017).

"[I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint, counterclaim or cross complaint set forth behaviors that a reasonable fact finder could find to be extreme or

outrageous. In exercising this responsibility, the court is not [fact-finding], but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." (Internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 847, 888 A.2d 104 (2006).

The defendants move for summary judgment as to the third count of the complaint alleging intentional infliction of emotional distress on the grounds that (1) Samudosky's conduct was not extreme and outrageous, and (2) Angelina did not suffer severe emotional distress. The plaintiff contends that there is a genuine issue of material fact as to whether his conduct was extreme and outrageous.

In the present case, the plaintiff's allegations do not, as a matter of law, rise to the level of outrageousness required to sustain a claim of intentional infliction of emotional distress. A coach participating in a scrimmage with his players is not patently unreasonable, let alone so atrocious as to go beyond all bounds usually tolerated by a society. See *Appleton* v. *Board of Education*, supra, 254 Conn. 211. Samudosky's act of kicking the ball, even if too hard given the size discrepancy between him and his players, cannot be deemed so extreme in degree as to render it intolerable. "The standard for extreme and outrageous behavior has historically been construed very strictly"; *Marquez* v. *Housing Authority*, Docket No. CV-12-5014008-S, 2013 WL 6916760, *5 (Conn. Super. December 3, 2013) (*Hon. Alfred J. Jennings, Jr.*, judge trial referee); and it has been said that "[t]his tort must be strictly policed to avoid turning ordinary life and its insults and ignorant behavior into an endless and uncontrollable pool for litigation." (Internal quotation marks omitted.) *Bremmer-McLain* v. *New London*, Docket No. CV-11-5014142-S, 2012 WL 2477921, *12 (Conn. Super. June 1, 2012) (*Devine, J.*), aff'd, 143 Conn. App. 904, 69 A.3d 351 (2013). To deem the conduct alleged to be extreme and outrageous, the standard would have to be construed much more broadly than our courts, including appellate courts, have done.

Similarly, the allegation regarding Samudosky evaluating Angelina despite not being a medical professional and allowing her to continue to play cannot be said to be extreme and outrageous. This was not an exceptional incident; as soccer is a contact sport, being hit with the ball is a risk every time soccer is played. See *Jaworski* v. *Kiernan*, supra, 241 Conn. 406–407. Additionally, it was not unreasonable of Samudosky to determine that Angelina was fine and okay to keep playing; although she had a bloody nose, it lasted only about five to ten minutes; when asked how she felt and if she thought she could play, she told Samudosky that she had a

headache but thought she could play; she was able to walk from the indoor gym to the field where practice was finished; and she did not ask not to play. Finally, mere errors in judgment do not, as a matter of law, rise to the level of extreme and outrageous conduct. See *Appleton* v. *Board of Education*, supra, 254 Conn. 210. Samudosky is thus entitled to summary judgment on this count on the ground that his conduct was not extreme and outrageous.

Furthermore, the claim of intentional infliction of emotional distress also fails because there is no genuine issue of material fact that Angelina did not suffer severe emotional distress. The distress necessary to sustain a claim of intentional infliction of emotional distress has been defined simply, but clearly, as "mental distress of a very serious kind." (Internal quotation marks omitted.) *Gillians* v. *Vivanco-Small*, 128 Conn. App. 207, 212, 15 A.3d 1200, cert. denied, 301 Conn. 933, 23 A.3d 726 (2011). Our appellate courts, however, have never adopted a bright-line test for determining what kinds of mental distress are sufficiently serious to sustain a claim of intentional infliction of emotional distress, but our trial courts have consistently used the standard set forth in the Restatement. See *Civitella* v. *Pop Warner Football*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-09-5010392-S (September 5, 2012) (*Matasavage, J.*) (54 Conn. L. Rptr. 641, 643); *Stapleton* v. *Monro Muffler, Inc.*, Docket No. CV-98-0580365-S, 2003 WL 462566, *5 (Conn. Super. February 3, 2003) (*Sheldon, J.*).

Comment (j) to the Restatement (Second) of Torts, § 46, provides in relevant part: "The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity." 1 Restatement (Second), supra, § 46, comment (j), pp. 77–78. Emotional distress is unlikely to be considered severe in the absence of treatment, medical, psychological, or otherwise. See, e.g., *Civitella* v. *Pop Warner Football*, supra, 54 Conn. L. Rptr. 643–44; *Stapleton* v. *Monro Muffler, Inc.*, supra, 2003 WL 462566, *4; cf. *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 529, 43 A.3d 69 (2012) ("[T]he only evidence of severe emotional distress that the plaintiff presented with respect to this conduct is that she became frightened and choked up upon being told that her career might be in jeopardy. There was no evidence that the plaintiff was in distress for an extended period or that she sought medical treatment."). Mere embarrassment, humiliation and hurt feelings do not constitute severe emotional distress. See *Barry* v. *Posi-Seal International, Inc.*, 36 Conn. App. 1, 20 n.17, 647 A.2d 1031 (1994), remanded for further consideration, 235 Conn. 901, 664 A.2d 1124 (1995); *Stapleton* v. *Monro Muffler, Inc.*, supra, *6 ("common feelings and emotions, such as hurt feelings,

embarrassment and humiliation, are things we all experience in our daily lives, and thus things we must learn to live with").

In the present case, the evidence submitted demonstrates that Angelina did not suffer severe emotional distress. Initially, it is noted that the consequences described—missing school, having to repeat a grade, not being able to participate with friends and family because of headaches, or not being able to finish the soccer season or try out for basketball the year the incident took place—are a result of her concussion rather than emotional distress. Nevertheless, Angelina testified that she suffered emotional distress from having to repeat the seventh grade, suffering embarrassment from being one year behind her friends and older than the other students in her grade. She testified that she does not like talking about her situation and is uncomfortable with it. The plaintiff similarly attested in her affidavit that Angelina has suffered embarrassment and humiliation at having to repeat the seventh grade. Notably, Angelina testified that she has not sought any treatment for her emotional distress and does not plan to. Although this distress is arguably long-term in the sense that she will continue to be older than her classmates throughout the remainder of high school, it cannot be said to be of the type that is so intolerable or unbearable that no reasonable person could be expected to endure. To the contrary, Angelina's embarrassment is nothing more than a "degree of transient and trivial emotional distress, which is a part of the price of living among people." (Internal quotation marks omitted.) *Civitella* v. *Pop Warner Football*, supra, 54 Conn. L. Rptr. 644. Samudosky is thus entitled to summary judgment on this count on the ground that Angelina did not suffer severe emotional distress.

### C

### Recklessness

"Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. . . . More recently, we have described recklessness as a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is

such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." (Internal quotation marks omitted.) *Doe* v. *Boy Scouts of America Corp.*, 323 Conn. 303, 330, 147 A.3d 104 (2016). "Reckless conduct must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention . . . or even an intentional omission to perform a statutory duty . . . . [In sum, reckless] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Citation omitted; internal quotation marks omitted.) *Northrup* v. *Witkowski*, supra, 175 Conn. App. 248.

In count six, the plaintiff asserts a claim of recklessness against all of the defendants for their alleged conduct relating to the incident and Angelina's injury. The defendants argue that the recklessness claim fails as a matter of law and that their allegedly reckless conduct did not cause Angelina's injuries.

In the present case, the plaintiff has simply incorporated her allegations of negligence in count five into the recklessness counts and then adds the legal conclusion that the defendants wantonly, wilfully, or recklessly failed to inform the plaintiff of Angelina's injuries in disregard for her safety, health and well-being. It has been said that "[m]erely using the term 'recklessness' to describe conduct previously alleged as negligence is insufficient as a matter of law." *Angiolillo* v. *Buckmiller*, 102 Conn. App. 697, 705, 927 A.2d 312, cert. denied, 284 Conn. 927, 934 A.2d 243 (2007); see id. (affirming summary judgment where plaintiffs' "simply incorporated their allegations of negligence and labeled the conduct recklessness"). Furthermore, the plaintiff's allegations, when viewed in light of the evidence on the record, even when taken in a light most favorable to her, cannot be characterized as rising above mere negligence. The evidence does not demonstrate that the incident of Angelina's being hit with the ball involved a situation of such a high degree of danger that allowing Angelina to continue practice or failing to immediately contact her parents constituted the sort of highly unreasonable conduct or "wanton disregard that is the hallmark of reckless behavior." *Northrup* v. *Witkowski*, supra, 175 Conn. App. 250. On the basis of the evidence submitted, the defendants' conduct cannot reasonably be characterized as anything more than mere thoughtlessness or inadvertence, which, as a matter of law, is not reckless conduct. See id., 248. Accordingly, the defendants are entitled to summary judgment as to the plaintiff's recklessness claim.[3]

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment as to all counts

of the plaintiff's complaint.

\* Affirmed. *Maselli* v. *Regional School District No. 10*, 198 Conn. App.
, A.3d (2020).

[1] Theresa Maselli will be referred to as the plaintiff and Angelina Maselli as Angelina throughout this memorandum of decision.

[2] "The only rational conclusion is that the defendant intended . . . to bring about a result, namely, some burning of that building or its contents, that invaded the interests of the synagogue in a way that the law forbids. . . . It is of no moment that he may not have specifically intended the Torah scrolls to burn, or that he may not have specifically intended that the building be substantially damaged by fire." (Citations omitted.) *American National Fire Ins. Co.* v. *Schuss*, supra, 221 Conn. 778–79.

[3] Because the court finds that the negligence claims are barred by governmental immunity, and that the plaintiff's assault and battery, intentional infliction of emotional distress and recklessness claims fail as a matter of law, the court does not address alternative arguments in favor of summary judgment.