STEPHEN CLINCH *v.* GENERALI-U.S. BRANCH
(AC 28784)

DiPentima, Gruendel and Lavery, Js.

Argued March 19—officially released September 2, 2008

*John T. Scully*, with whom, on the brief, was *Patrick J. Flaherty*, for the appellant (plaintiff).

*Michael D. Chefitz*, pro hac vice, with whom were *Dawn M. Neborsky* and, on the brief, *Michael J. Smith* and *Kendra A. Christensen*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Stephen Clinch, appeals from the judgment of the trial court rendered following the granting of a motion for summary judgment in favor of the defendant, Generali-U.S. Branch. The plaintiff claims that the court improperly determined that the defendant had no duty to defend its insured in an action

that the plaintiff had brought against the insured and, thus, improperly failed to grant his motion for summary judgment and granted the defendant's motion. We affirm the judgment of the trial court.

On or about September 20, 1997, the plaintiff was a customer and business invitee of America's Cup Restaurant in Middletown. While at the restaurant, three men, who were under the influence of alcohol, confronted the plaintiff. During the confrontation, one of the men struck and hit the plaintiff. After this altercation, the plaintiff and the three men were ejected from the restaurant into its parking area where the altercation continued. The plaintiff was struck in the back of his head, causing him to fall, strike the ground and suffer further injuries. On July 9, 1999, the plaintiff commenced a lawsuit against Waterfront Restaurants, Inc., Southern Ties, Inc., and Harbor Park Associates Limited Partnership, all doing business as America's Cup Restaurant (insured), as well as Uokuni Connecticut, Inc., Ventry, Inc., John O'Callahan, Richard Vasile and Frank Gionfriddo. The plaintiff's complaint alleged negligence in the first count and claims of wilful, wanton and reckless conduct in the second count. On March 26, 2003, the court rendered judgment in that case in favor of the plaintiff against the insured and Frank Gionfriddo, an employee of the insured, in the amount of $320,609.85 plus costs in the amount of $674.70.

At the time of the incident, the insured carried a general liability insurance policy and a liquor liability insurance policy issued by the defendant. Both of those policies contained exclusion provisions for assault and battery. The defendant did not provide a defense to the insured in the original lawsuit.

The plaintiff brought the present action against the defendant for the defendant's refusal to defend its insured. In his complaint, the plaintiff claimed that

because the judgment had not been satisfied within thirty days after it was rendered, pursuant to General Statutes § 38a-321,[1] he, as a judgment creditor, became subrogated to all the rights of the defendant's insured. The plaintiff claimed that he therefore had a right of action against the defendant to recover the judgment rendered against the defendant's insured, including costs and statutory interest due thereon pursuant to General Statutes § 37-3b.

On February 7, 2006, the plaintiff filed a motion for summary judgment. On April 25, 2006, the defendant filed a cross motion for summary judgment. The motions addressed the issue of the defendant's duty to defend the insured as to both counts in the underlying action. The court held a hearing on the motions on January 29, 2007, and issued a memorandum of decision filed January 31, 2007, in which the court denied both motions for summary judgment with regard to the first count in the underlying action alleging negligence and

[1] General Statutes § 38a-321 provides in relevant part: "Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. . . . Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, *such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.*" (Emphasis added.) See also *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 198, 663 A.2d 1001 (1995) (statute intended to give judgment creditor same rights under policy as insured).

granted the defendant's cross motion for summary judgment as to the second count alleging wilful, reckless and wanton conduct. Both parties moved for reconsideration, and the defendant moved for reargument. A hearing was held on March 21, 2007, during which the court ordered the parties to brief the issue of whether an assault must be intentional. On April 17, 2007, the court rendered summary judgment in favor of the defendant as to the first count. This appeal followed.[2]

The plaintiff claims that the court improperly determined that the defendant did not have a duty to defend. Specifically, the plaintiff argues that the defendant had a duty to defend because allegations in the complaint *possibly* could have fallen within the coverage of the policy and that the defendant's failure to defend was a breach of this duty. We disagree.

Before addressing the plaintiff's arguments, we set forth the applicable standard of review of a trial court's ruling on motions for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 251–52, 819 A.2d 773 (2003). In the present case, the trial court was presented with cross

---

[2] At oral argument before this court, the plaintiff and the defendant agreed that only count one was the subject of the appeal and that the operative memorandum of decision is that filed April 17, 2007.

motions for summary judgment based on undisputed facts. Therefore, our review is plenary and we must determine whether the court's conclusions are legally and logically correct and are supported by the record. See id., 252.

"[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend. . . . Indeed, [i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured. . . . On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." (Citations omitted; internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 398–99, 757 A.2d 1074 (2000). Our Supreme Court has concluded consistently that "the duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend . . . ." (Internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 464, 876 A.2d 1139 (2005).

"In ascertaining the meaning of the terms of the insured's policy, we also are guided by well established principles. The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous. . . . Moreover, [t]he provisions of the policy issued by the defendant cannot be construed in a vacuum. . . . They should be construed from the perspective of a reasonable layperson in the position of the purchaser of the policy." (Citation omitted; internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 254 Conn. 399–400.

The plaintiff focuses his argument on the language in *Community Action for Greater Middlesex County, Inc.*, that states that "[i]f an allegation of the complaint falls *even possibly* within the coverage, then the insurance company must defend the insured." (Emphasis added; internal quotation marks omitted.) Id., 399. Thus, in determining whether the defendant had a duty to

defend, we must examine both the language of the applicable policies and the allegations of the underlying complaint. Both the general liability policy and the liquor liability policy that the defendant issued to the insured contained exclusion provisions for assault and battery. The general liability policy's assault and battery exclusion reads: "In consideration of the reduced premium charged, it is understood that this insurance does not apply to bodily injury, personal injury or property damage arising out of assault or battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

"Furthermore, there is no coverage for assault and/or battery claim against the insured if the claim is based on the alleged failure of the insured to protect individuals whether or not patrons, or involves the negligent selection, training, employment, supervision or control of any individual." The liquor liability policy includes nearly identical language in its exclusion.[3] Thus, the policy language clearly sets forth exclusions for injuries arising from assault or battery or from any acts or omissions connected to suppressing or preventing such acts of assault or battery.

Next, we turn to the plaintiff's complaint in the underlying action against the insured to determine whether the plaintiff stated facts that bring the injury within the

---

[3] The liquor liability exclusion reads: "In consideration of the reduced premium charge, it is agreed and understood that this insurance does not apply to bodily injury, or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

"Furthermore, there is no coverage for assault and/or battery claim against the insured if the claim is based on the alleged failure [of] the insured to protect individuals whether or not patrons, or involves the negligent selection, training, employment, supervision or control of any individual."

coverage. The plaintiff asserts that when the paragraphs of the first count are read in isolation, there are allegations that do not fall within the assault and battery exclusions and that the first count does not state that all of the severe and painful injuries were caused by the plaintiff being punched and struck. The plaintiff also points out that the terms "assault," "battery" and "assaulted" were not used in the complaint. The plaintiff argues that the defendant, therefore, failed to carry its burden of proving that the assault and battery exclusion applied to every individual allegation contained in his complaint.

The plaintiff asks us to view his complaint too narrowly. "In Connecticut, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 778, 905 A.2d 623 (2006).

In the first count of his complaint, the plaintiff alleged that the insured was negligent, and, as a result of this negligence, the plaintiff was injured. The plaintiff specifically alleged that "as a direct result of the [insured's] failure to maintain its restaurant in a reasonably safe condition, the plaintiff, Stephen Clinch, and two of his companions, were confronted inside the restaurant by

a group of three males who were under the influence of alcohol, and the plaintiff was struck and hit inside the [insured's] restaurant by one of these males." The plaintiff also alleged that "[a]s a result of the negligence and carelessness of the [insured], their agents, servants or employees, as aforesaid, the plaintiff was caused to be punched and struck inside the [insured's] restaurant and in the parking lot area of the restaurant and he was caused to suffer injuries . . . ." The plaintiff pleaded thirteen allegations of negligence, which proximately caused the plaintiff's injuries and losses, none of which mentions assault and battery.[4]

---

[4] Paragraph seven of the plaintiff's complaint alleges: "The plaintiff's injuries and losses were proximately caused by the negligence and carelessness of the defendants, their agents, servants or employees in one or more of the following ways:

"a. They failed to maintain the restaurant in a reasonably safe condition;

"b. They continued to serve alcoholic beverages to customers and patrons of its restaurant who they knew or should have known were under the influence of alcohol;

"c. They failed to properly protect the plaintiff from the dangers to which he was exposed;

"d. They improperly ejected the plaintiff from its restaurant and caused him to suffer injuries in the parking lot of the restaurant;

"e. They failed to properly train its employees regarding the dangers of serving alcoholic beverages to persons who were under the influence of alcohol;

"f. They failed to properly train its employees regarding how to prevent, break up and control altercations that developed inside and outside the restaurant;

"g. They failed to hire and staff the restaurant with sufficient adequately trained personnel in order to protect the safety of the customers of the restaurant;

"h. They failed to properly supervise and control its restaurant and the parking lot area of the restaurant in order to prevent the injuries that the plaintiff was caused to suffer;

"i. They failed to properly supervise and control its employees who were given authority and responsibility for maintaining the restaurant in a reasonably safe condition;

"j. They failed to adopt adequate policies for safely ejecting disorderly customers from the restaurant and the parking lot area of the restaurant;

"k. They failed to adopt adequate policies for properly controlling the service of alcohol to customers and employees of the restaurant;

"l. They placed a convicted felon with a history of violence and drug

Reading the complaint in its entirety, as we must, the only cause of action alleged in the first count is for injury arising from assault and battery that stemmed from the insured's negligence. The plaintiff argues that on the basis of the language of the complaint, one could entertain a variety of causes for some of his injuries unrelated to assault and battery. The negligent acts that he describes, however, are tied inextricably by the language of the complaint to assault and battery.[5] He describes no other manner in which he sustained his injuries. Thus, we conclude that the only causes reasonably construed from the plaintiff's complaint, that is to say, that do not unreasonably contort the meaning of the language of the complaint, are for injury arising out of assault and battery.

The plaintiff's next argument is that the defendant's assault and battery exclusion is ambiguous and inapplicable. The plaintiff argues that neither assault nor battery are defined in the insurance policies issued by the defendant and that because they are susceptible to more than one interpretation, the court must adopt the construction that sustains his claim. See *Allstate Ins. Co.* v. *Barron,* 269 Conn. 394, 406, 848 A.2d 1165 (2004). He further asserts that the allegations in the first count do not establish the requisite "intentional" conduct necessary to constitute an assault and battery within the meaning of the defendant's policy exclusion.

abuse in a position of authority and responsibility at the restaurant, and they allowed this convicted felon to use his position to cause injury to the plaintiff; and

"m. They failed to warn the plaintiff and other customers of the restaurant about the dangers to which they were exposed."

[5] The plaintiff argues, for example, that the complaint could be read to allege a premises liability claim and that the language could be interpreted to mean that he was struck by a falling object. The plaintiff also argues that because he chose to code the case as "T 03" or "Defective Premises—Private—Other," under the judicial branch's coding system, the defendant should have known that he was pursuing a defective premises case and not an assault and battery case.

This argument fails for two reasons. First, "[i]n this state an actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." (Internal quotation marks omitted.) *Markey* v. *Santangelo*, 195 Conn. 76, 78, 485 A.2d 1305 (1985). Thus, intentional conduct is not required for an assault and battery.[6] Second, our Supreme Court has held that a nearly identical assault and battery exclusion was not ambiguous and was intended to exclude all assaults and batteries from coverage. See *Kelly* v. *Figueiredo*, 223 Conn. 31, 37, 610 A.2d 1296 (1992). In examining the words of the exclusions at issue in this case and according the words of the policies' exclusions their natural and ordinary meaning, we conclude that, as in *Kelly*, it was the intent of the parties, the defendant and the insured, to exclude all assaults and batteries from coverage. Thus, we conclude that the assault and battery exclusions are not ambiguous and that, having already determined that the plaintiff's claims were ones alleging assault and battery, the exclusions are applicable to the plaintiff's claims. Therefore, the defendant had no duty to defend, and the court properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The plaintiff cites *DeWitt* v. *John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594–95, 501 A.2d 768 (1985), for the proposition that an assault requires intentional conduct. In *DeWitt*, however, the court had determined that in "interpreting the word 'assault' in relation to those words which are syntactically connected with it in the policy," there were multiple possible meanings of the word. Id., 595. In the context of the present insurance policy, we determine that the word "assault" clearly encompasses both the intentional and negligent meanings.