******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LIFT-UP, INC., ET AL. *v.* COLONY INSURANCE COMPANY ET AL.
## (AC 43755)

Bright, C. J., and Elgo and Clark, Js.

*Syllabus*

The substitute plaintiffs, D and A, sought a declaratory judgment to determine the rights and obligations of the parties under a certain insurance policy that had been issued to the plaintiff L Co., a wheelchair accessible van seller and van modifying company, by the defendant C Co. In an underlying personal injury action, D, a paraplegic confined to a motorized wheelchair, sought damages for injuries he sustained in connection with a confrontation with K, an employee of L Co. During an argument D had with K about modifications L Co. made to D and A's van, the confrontation turned physical when K slapped a baseball cap off D's head. When K saw that A, D's wife, had recorded the incident on her cell phone, he grabbed the phone from her and threatened in crude terms to break it. As D moved his wheelchair toward K in order to retrieve the cell phone, K grabbed D's arm and the wheelchair and altered its path, which caused D to fall from his wheelchair and sustain serious injuries. D and A settled an underlying personal injury action against L Co. and K by means of a stipulation for judgment. L Co. and K commenced an action against C Co. seeking a legal declaration that, under their insurance policy, C Co. had a duty to defend and indemnify them for the claims alleged in the personal injury action. As part of the stipulated settlement of the personal injury action, L Co. assigned its rights under the policy to D and A, and D and A were substituted as party plaintiffs. The trial court granted a motion for summary judgment filed by C Co. as to D and A's complaint and its counterclaim, from which D and A appealed to this court. *Held*:

1. The trial court did not err in holding that the exclusion provisions under the insurance policy pertaining to an assault or battery applied to D's and A's claims and that there was no coverage under the policy because D's injuries were not caused by an accident that resulted from garage operations, and properly determined that C Co. had no duty to provide a defense to L Co. pursuant to the exclusion provisions: the policy excluded claims for injuries that arose out of an assault or battery or both, and K's slapping D's baseball cap and grabbing A's cell phone and threatening to break it constituted actual harmful or offensive contact and verbal abuse from which D's injuries arose because if K had not escalated the verbal argument into verbal abuse and engaged in offensive contact with both D and A, D would not have moved his wheelchair in K's direction and K would not have had the opportunity to grab D or his wheelchair to divert D's path; accordingly, D's injuries grew out of, flowed from, had their origins in, and were connected with K's intentional acts, which by themselves, constituted an assault, battery, or assault and battery within the meaning of the policy.

2. The trial court did not improperly confine its analysis to the operative complaint and refuse to consider certain pieces of extrinsic evidence that allegedly supported C Co.'s duty to defend: at the time the court heard oral arguments on the motion for summary judgment, it stated that it had reviewed "everything," and the documents at issue were attached to D and A's objection to the motion for summary judgment, and, without evidence to the contrary, this court concluded that the trial court reviewed those documents; moreover, even if the court had not reviewed the documents, they were insufficient to support D and A's claim that C Co. had a duty to defend, as there were no meaningful factual differences between the documents and the operative complaint.

Argued April 5—officially released August 24, 2021

*Procedural History*

Action seeking a declaratory judgment determining, inter alia, the rights of the parties under a certain insur-

ance policy issued to the named plaintiff by the named defendant concerning the underlying claims of the defendant Dennis Kinman brought against the plaintiffs, and for other relief, brought to the Superior Court in the judicial of Danbury, where the named defendant filed a counterclaim; thereafter, the defendant Dennis Kinman and Amy Kinman were substituted as the plaintiffs; subsequently, the court, *D'Andrea, J.*, granted the named defendant's motion for summary judgment on the complaint and on the counterclaim and rendered judgment thereon, from which the substitute plaintiffs appealed to this court. *Affirmed.*

*Brian Kluberdanz*, with whom was *David M. Cohen*, for the appellants (substitute plaintiffs).

*Melicent B. Thompson*, with whom, on the brief, was *Elizabeth O. Hoff*, for the appellee (named defendant).

*Opinion*

CLARK, J. In this declaratory judgment action, the substitute plaintiffs, Dennis Kinman (Kinman) and Amy Kinman (jointly, Kinmans), appeal from the summary judgment rendered by the trial court in favor of the defendant Colony Insurance Company (Colony)[1] on the Kinmans' amended complaint and Colony's counterclaim. The litigation centers on whether Colony had a duty to defend the original plaintiffs, Lift-Up, Inc. (Lift-Up) and its president, Bruce Kutner,[2] in a personal injury action that the Kinmans had brought against them.[3] On appeal, the Kinmans' principal claim is that in granting Colony's motion for summary judgment, the court improperly construed the allegations of the operative complaint and the terms of the garage liability policy that Colony had issued to Lift-Up. More to the point, the Kinmans claim that the court improperly concluded as a matter of law that their injuries were not caused by an accident that resulted from Lift-Up's garage operations but, rather, arose out of Kutner's assault, battery, or assault and battery, for which the policy provides no coverage.[4] The Kinmans also claim that the court improperly (1) ignored extrinsic evidence that they argue supported their claim that Colony had a duty to defend and (2) predicated its ruling on allegations of intentional and/or reckless conduct that were properly pleaded in the alternative. We affirm the judgment of the trial court.

The following facts underlie the appeal. Lift-Up is a business located in Bethel that rents and sells wheelchair accessible vans and specializes in modifying such vans to meet the needs of its customers. On or about March 4, 2016, Colony issued a garage liability insurance policy (policy) to Lift-Up, which provided coverage[5] from March 4, 2016, to March 4, 2017. The policy contains coverage and exclusion provisions that are at issue in this appeal.

The facts alleged in the underlying personal injury action may be summarized as follows. Kinman is a paraplegic confined to a motorized wheelchair. In October, 2016, he purchased a new van through Lift-Up and entered into a contract with Lift-Up and Kutner to modify the van for his use. Kinman was dissatisfied with the modifications Lift-Up made, and he returned the van several times for repair. On December 3, 2016, the Kinmans went to Lift-Up to retrieve the van. While they were there, Kinman and Kutner had an argument that turned physical when Kutner slapped the baseball cap Kinman was wearing from his head. When Kutner saw that Amy Kinman had recorded the dispute on her cell phone, he grabbed the cell phone from her and threatened in crude terms to break it. Kinman moved his wheelchair toward Kutner in order to retrieve the cell phone. As Kinman moved toward Kutner, Kutner grabbed Kinman's arm and the wheelchair and altered

the path of the wheelchair, which caused Kinman to fall from his wheelchair and sustain serious injuries.[6]

In March, 2017, Kinman commenced the personal injury action against Lift-Up and Kutner seeking damages for the injuries he had sustained.[7] See footnote 3 of this opinion. In May, 2017, he filed an application for a prejudgment remedy. That application was granted in the amount of $250,000 in August, 2017. On February 2, 2018, Kutner executed an affidavit in connection with a criminal proceeding related to the December 3, 2016 incident.[8] In his affidavit, Kutner attested that he did not expect or intend to harm Kinman when he diverted the path of Kinman's wheelchair. Amy Kinman subsequently intervened in the personal injury action, and, on March 5, 2018, the Kinmans filed an amended complaint (operative complaint in the personal injury action) [9] to conform to the "new" evidence in Kutner's affidavit.

On November 16, 2018, the Kinmans settled the personal injury action by means of a stipulation for judgment.[10] The stipulation for judgment provided that (1) the Kinmans were awarded $850,000 in compensatory damages against Lift-Up and $175,000 in exemplary damages against Kutner;[11] (2) Kutner was to pay the $175,000 judgment rendered against him "as partial consideration toward the satisfaction of the [s]tipulated [j]udgment"; (3) Lift-Up was to pay nothing toward the $850,000 judgment rendered against it, and instead assigned to the Kinmans its rights under the Colony policy; and (4) the Kinmans were only to pursue Colony, and not Lift-Up or Kutner, for payment of the $850,000 judgment for compensatory damages entered against Lift-Up.

The following facts are alleged in the declaratory judgment action. As previously stated, Colony had agreed to provide Lift-Up with liability insurance coverage for bodily injury caused by an accident resulting from garage operations. See footnote 5 of this opinion. In June, 2017, approximately six months after the December 3, 2016 incident and several months after Kinman had commenced the personal injury action, Lift-Up submitted Kinman's claim to Colony for a defense and indemnification under the policy. Colony informed Lift-Up that it was reserving its rights under the policy pending receipt of the "legal papers" and conducting an investigation. On June 22, 2017, Colony informed Lift-Up that, on the basis of the allegations in the personal injury action for intentional assault, intentional infliction of emotional distress and negligent assault and battery, specific exclusion provisions in the policy may preclude coverage and that Colony was handling the matter under a reservation of rights. On June 28, 2017, Colony informed Lift-Up that there was no coverage available under the policy.

In December, 2017, Lift-Up and Kutner commenced an action against Colony that sought a legal declaration

that, under the policy, Colony had a duty to defend and indemnify them for the claims alleged in the personal injury action. As part of the November, 2018 stipulated settlement of the personal injury action, Lift-Up assigned its rights under the policy to the Kinmans. As a result of the assignment of Lift-Up's claim against Colony in the stipulated settlement in the personal injury action, in January, 2019, the Kinmans moved to be substituted as the plaintiffs in the declaratory judgment action and thereafter filed an amended complaint against Colony pursuant to the direct action statute, General Statutes § 38a-321.[12] The Kinmans sought from Colony satisfaction of their $850,000 compensatory damages stipulated judgment against Lift-Up.

In response, on March 29, 2019, Colony filed an answer, special defenses, and a counterclaim. The multicount counterclaim sought declarations that (1) Colony had no duty to defend or indemnify Lift-Up under the policy as to the underlying claims against Lift-Up because (a) the policy's assault and battery exclusion endorsement applied to bar coverage for such claims and (b) the damages for which coverage was sought were not caused by an "accident resulting from 'garage operations,'" and (2) because Colony had no duty to defend Lift-Up as to the underlying claims against Lift-Up, Colony was not liable for any portion of the $850,000 stipulated judgment entered against Lift-Up in the underlying action.[13] On April 1, 2019, Colony moved for summary judgment as to the Kinmans' complaint and its own counterclaim.

Following argument on the motion for summary judgment, the court, *D'Andrea, J.*, issued a memorandum of decision granting Colony's motion for summary judgment as to the Kinmans' complaint and Colony's counterclaim. In its memorandum of decision, the court reviewed all counts of the operative complaint in the personal injury action to determine whether "at least one allegation of the complaint falls even possibly within the coverage"; (internal quotation marks omitted) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 739, 95 A.3d 1031 (2014); as the Kinmans claimed, or "the only causes reasonably construed from the [operative] complaint . . . that do not unreasonably contort the meaning of the language of the complaint, are for injury arising out of assault and battery"; *Clinch* v. *Generali-U.S. Branch*, 110 Conn. App. 29, 39, 954 A.2d 223 (2008), aff'd, 293 Conn. 774, 980 A.2d 313 (2009); as Colony contended. In doing so, the court noted that "an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the complaint." *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 646, 679 A.2d 929 (1996).

Although the court parsed all counts of the operative

complaint in the personal injury action, our resolution of the appeal focuses on the allegations in counts one and two of that complaint, each titled negligence.[14] Count one, which purports to assert a negligence claim against Lift-Up, alleges that Kinman attempted to pick up the vehicle at least five times between October 16 and December 3, 2016. Each time Kinman drove the vehicle, he discovered that several modifications had not been completed properly and that the vehicle was not safe for him to operate. When Kinman returned the vehicle to Lift-Up, Kutner "often became *enraged* with [Kinman] and threatened to cancel the modification contract." (Emphasis added.)

On December 3, 2016, the Kinmans attempted to pick up the vehicle. Shortly after they arrived, "a verbal *argument* between [Kutner] and [Kinman] began . . . . [Kutner] . . . *escalated* the verbal dispute *into a physical one by slapping* [*Kinman's*] *baseball cap off his head.* [Amy] Kinman was recording the altercation with her [cell] phone and . . . [Kutner] *grabbed the cell phone* away from her and *threatened to 'break this fucking thing* right now.' " (Emphasis added.) Kinman "attempted to retrieve [Amy Kinman's] cell phone . . . and . . . moved his wheelchair in [Kutner's] direction," and "[Kutner] . . . *grabb*[*ed* Kinman] and his wheelchair and *mov*[*ed*] *it* to the side." (Emphasis added.) In "*moving* or *pushing* [*Kinman*] *and his wheelchair*," Kutner caused Kinman to fall from his wheelchair and sustain bodily injuries. (Emphasis added.)[15]

The court found Kutner's conduct was "clearly aggressive and uncontrolled behavior [that] sounds more in intentional conduct than negligence. The starting point of 'slapping the baseball cap off [Kinman's] head' is, at best, an attempted assault if Kutner only struck the cap, and at worst, an assault and battery by the definitions in the . . . policy . . . ."

Applying the policy language to the facts of the operative complaint in the personal injury action, the court found that, notwithstanding the titles assigned to counts one and two, each count alleged facts amounting to an assault, a battery, or an assault and battery, and were therefore barred under the policy's unambiguous exclusions provision.[16] It also concluded that the injuries Kinman sustained on December 3, 2016, were not caused by an "accident" that resulted from "garage operations."[17] Colony, therefore, had no duty to defend, and thus no duty to indemnify. Thus, the court granted the motion for summary judgment as to the Kinmans' March 12, 2019 complaint and Colony's counterclaim. The Kinmans appealed that judgment to this court.

We first set forth the well established standard of review of a court's granting a motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings,

affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Dreher* v. *Joseph*, 60 Conn. App. 257, 259–60, 759 A.2d 114 (2000). "The facts at issue are those alleged in the pleadings." (Internal quotation marks omitted.) *Parnoff* v. *Aquarion Water Co. of Connecticut*, 188 Conn. App. 153, 164, 204 A.3d 717 (2019).

"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012).

Because there are no factual issues in dispute in the present case, the legal question is whether Colony had a duty to defend its insureds. "The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." (Internal quotation marks omitted.) *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 599 n.7, 840 A.2d 1158 (2004). "[O]ur review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Dreher* v. *Joseph*, supra, 60 Conn. App. 260.

"[T]he duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend . . . ." (Internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 464, 876 A.2d 1139 (2005). Our Supreme Court repeatedly has stated that the duty to defend is considerably broader than the duty to indemnify. "[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the

insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint." (Internal quotation marks omitted.) *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 711–12, 826 A.2d 107 (2003).

"Where . . . an insured alleges that an insurer improperly has failed to defend and provide coverage for underlying claims that the insured has settled the insured has the burden of proving that the claims were within the policy's coverage . . . ." *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 55, 730 A.2d 51 (1999); see also *Griswold* v. *Union Labor Life Ins. Co.*, 186 Conn. 507, 517–18, 442 A.2d 920 (1982) (insured entitled to coverage under policy if it can demonstrate it qualifies under terms and conditions). Only after the insured has demonstrated that claims fall within a policy's coverage does the insurer then have "the burden of proving that the claim for which coverage is sought falls within a policy's exclusion." *Lancia* v. *State National Ins. Co.*, 134 Conn. App. 682, 690, 41 A.3d 308, cert. denied, 305 Conn. 904, 44 A.3d 181 (2012).

I

On appeal, the Kinmans claim that the court erred in holding that the policy's exclusions provision pertaining to an assault or battery apply to their claims and that there was no coverage under the policy because Kinman's injuries were not caused by an "accident" that resulted from "garage operations." They argue that the operative complaint in the personal injury action alleges that Kinman's injuries arose solely out of a business dispute between the parties and were the result of an "accident" within the meaning of the policy. They essentially argue that the court erroneously failed to focus exclusively on the very specific and discrete acts that were alleged to be the proximate cause of Kinman's injuries, i.e., Kutner's allegedly unintentional and "careless" use of force in diverting Kinman's wheelchair as it moved toward him. As a result, they claim that this case is distinguishable from cases Colony and the court relied on because in each of those cases the injuries sustained were alleged to have been proximately caused by intentional conduct. They further argue that the policy does not bar the claims because (a) the exclusion provisions are ambiguous insofar as they purport to exclude claims arising out of an "unintentional" assault or battery,[18] and (b) the negligent conduct alleged in the complaint does not meet the definition of a negligent assault or battery under Connecticut law. We disagree and conclude that, even if we assume arguendo that coverage was triggered because Kinman's injuries were caused by an accident resulting from garage operations, the claims are nevertheless barred by the policy's exclusions provision because Kinman's injuries "*arose out*

*of*" conduct constituting an *intentional* assault or battery as those terms are defined in the policy.

Resolution of the claims requires us to examine the allegations of the operative complaint in the personal injury action and the language of the policy to determine whether Colony is required to defend Lift-Up. See *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 41, 801 A.2d 752 (2002). We look first at the language of the policy.

Construction of a contract of insurance is a question of law for the court to review de novo. *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 543, 687 A.2d 1262 (1996). "The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous. . . . Moreover, [t]he provisions of the policy issued by the [insurer] cannot be construed in a vacuum. . . . They should be construed from the perspective of a reasonable layperson in the position of the purchaser of the policy." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 399–400, 757 A.2d 1074 (2000).

The original exclusions provision in the policy states in relevant part: "This insurance does not apply to any of the following . . . Bodily injury or property damage expected or intended from the standpoint of the insured. But for garage operations other than covered autos this exclusion does not apply to bodily injury resulting from the use of a reasonable force to protect persons or property."[19] (Internal quotation marks omitted.)

The policy's exclusions provision was modified by an endorsement that added an exclusion titled "Assault, Battery, or Assault and Battery." That provision excludes from coverage claims for " '[b]odily injury' . . . *arising out of* . . . 'Assault', 'Battery' or 'Assault

and Battery' caused, directly or indirectly, by you, any 'insured', any person, any entity or by any means whatsoever . . . ." (Emphasis added.) The endorsement contains the following definitions: "Assault means . . . an *intentional or unintentional act*, including . . . *intimidation . . . verbal abuse*, or any *threatened harmful or offensive contact* between two or more persons creating an *apprehension in another* of immediate harmful or offensive contact . . . . Battery means an *intentional or unintentional act*, including . . . any *actual harmful or offensive contact between two . . . persons which brings about harmful or offensive contact* to another or *anything connected to another*. Assault and [b]attery means the combination of an [a]ssault and a [b]attery." (Emphasis added; internal quotation marks omitted.) Thus, the policy excludes liability coverage for any bodily injury *arising out of* an assault, battery, or assault and battery caused directly or indirectly by anyone by any means whatsoever.

With respect to the complaint, "[t]he interpretation of pleadings is always a question of law for the court. . . . In addition, [t]he allegations of the complaint must be given such reasonable construction as will give effect to [it] in conformity with the general theory which it was intended to follow, and do substantial justice between the parties. . . . It is axiomatic that the parties are bound by their pleadings." (Citation omitted; internal quotation marks omitted.) *O'Halloran* v. *Charlotte Hungerford Hospital*, 63 Conn. App. 460, 463, 776 A.2d 514 (2001).

The operative complaint in the personal injury action alleges that on prior occasions Kutner became enraged with Kinman when he returned the van for repairs. During the December 3, 2016 incident resulting in Kinman's injuries, Kutner argued with Kinman, slapped the baseball cap from his head, grabbed Amy Kinman's cell phone and threatened in crude terms to break it. As Kinman moved his wheelchair toward Kutner to retrieve Amy Kinman's cell phone, Kutner, for no alleged reason, grabbed Kinman's arm and wheelchair to divert its path, which caused Kinman to fall to the ground and sustain injuries. On the basis of those allegations, we conclude that the Kinmans' claim falls within the policy's exclusion for bodily injuries *arising out of* an assault or battery.

We agree with the trial court that Kutner's "slapping the baseball cap off [Kinman's] head is, at best, an attempted assault if Kutner only struck the cap, and at worst, an assault and battery by the definitions in the . . . policy . . . ." (Internal quotation marks omitted.) Kutner also committed an assault, battery and/or assault and battery when he intentionally grabbed Amy Kinman's cell phone from her and threatened in crude terms to break it. Those acts constituted "actual harm-

ful or offensive contact" and "verbal abuse" between Kutner and Amy Kinman.

We also conclude that Kinman's injuries *arose out of* those acts. This is true even if we accept, *without deciding*, the Kinmans' claims that the complaint must be read to allege that (a) Kutner did not intend to harm Kinman when he engaged in the discrete act of grabbing Kinman and his wheelchair, (b) the policy's exclusions are ambiguous to the extent they purport to define unintentional acts as an "assault" or "battery," and (c) the discrete acts that proximately caused Kinman's injuries were unintentional and do not meet the elements of a common-law negligent assault or battery under Connecticut law.[20]

The policy at issue does not exclude just those claims for injuries "caused" by an assault or battery. Rather, the policy excludes claims for injuries that *arise out of* such conduct. As the Kinmans themselves note in their brief, our courts have given an expansive meaning to the phrase "*arising out of*" when used in an insurance policy. (Emphasis added.) In *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975), our Supreme Court held that "it is generally understood that for liability for an accident or an injury to be said to '*arise out of*' the 'use' of an automobile for purpose of determining coverage under the appropriate provisions of a liability insurance policy, it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of the automobile, in order to meet the requirement that there be a causal relationship between the accident or injury and the use of the automobile." (Emphasis added.) More recently in *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 261 Conn. 48, our Supreme Court held that an injury or accident may be said to arise out of the use of an automobile if the injury or accident " 'was connected with,' " " 'had its origins in,' " " 'grew out of,' " " 'flowed from,' " or " 'was incident to' " the use of the automobile. "*Under this standard of causation, it need not be shown that the incident in question was proximately caused by the vehicle for coverage to attach.*" (Emphasis added.) Id.

It is thus well settled that an injury need not be "proximately caused" by an act or occurrence in order to *arise out of* such an act or occurrence within the meaning of an insurance contract. It is sufficient to show more broadly that an accident or injury "was connected with," "had its origins in," "grew out of," "flowed from," or "was incident to" an incident or occurrence. (Internal quotation marks omitted.) Id. Applying that meaning to the phrase "*arising out of*" as it appears in the policy at issue in the present case, it is clear that Kinman's injuries *arose out of* an assault or battery or both. The operative complaint alleges that immediately preceding Kutner's contact that allegedly

caused Kinman to fall and sustain bodily injuries, an argument had ensued during which Kutner slapped the baseball cap off Kinman's head. Upon observing Amy Kinman recording the incident on her cell phone, Kutner then grabbed Amy Kinman's cell phone and threatened in crude and offensive terms to break it. Kinman then moved his wheelchair in Kutner's direction in an effort to retrieve his wife's phone at which point Kutner grabbed Kinman and the wheelchair causing Kinman to fall to the ground and sustain injuries.

If not for Kutner escalating the verbal argument into verbal abuse and engaging in offensive contact with both of the Kinmans, Kinman would not have moved his wheelchair in Kutner's direction and Kutner would not have had the opportunity to grab Kinman or his wheelchair to divert Kinman's path. While the Kinmans claim that Kutner acted negligently when he grabbed Kinman and the wheelchair and that those negligent acts proximately caused Kinman's injuries, those acts and Kinman's injuries nevertheless *arose out of* Kutner's instigating intentional acts of slapping the baseball cap off Kinman's head and grabbing Amy Kinman's cell phone and threatening to break it. Kinman's injuries, therefore, "grew out of," "flowed from," "had [their] origins in" and "[were] connected with" Kutner's intentional acts; (internal quotation marks omitted) id.; which by themselves, constituted an "[a]ssault," "[b]attery" or "[a]ssault and [b]attery" within the meaning of the policy. In this respect, the intentional conduct was "tied inextricably by the language of the complaint to assault and battery." *Clinch* v. *Generali-U.S. Branch*, supra, 110 Conn. App. 39.

As a result, we conclude that the trial court properly determined that Colony had no duty to provide a defense to Lift-Up pursuant to the exclusions provisions of the policy.

## II

The Kinmans second claim is that when deciding Colony's motion for summary judgment, the court improperly restricted its analysis to the operative complaint and refused to consider two pieces of extrinsic evidence that support Colony's duty to defend. We do not agree.

The Kinmans' claim is premised on the rule that "the duty to defend must be determined by the allegations set forth in the underlying complaint itself, with reliance on extrinsic facts being permitted only if those facts support the duty to defend." *Misti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 161, 61 A.3d 485 (2013) (*Misti*).[21] The Kinmans argue that the court failed to consider the affidavit Kutner signed as part of his application for an accelerated pretrial rehabilitation program related to the criminal charges lodged against him as a result of the December 3, 2016

incident. In addition, they argue that the court did not consider the log Colony created during its investigation of the incident, which contains a statement Kutner gave to a claims investigator.

Colony disagrees with the Kinmans' factual representation that the court failed to consider the documents on the basis of the statement the court made at the time it heard oral arguments on the motion for summary judgment: "All right, so, I have reviewed everything." The affidavit and Colony's log were attached to the Kinmans' objection to the motion for summary judgment. We agree with Colony and conclude, without evidence to the contrary, that the court reviewed the documents.

Moreover, for the sake of argument only, even if the court had not reviewed the documents, they are insufficient to support the Kinmans' claim that Colony had a duty to defend. There are no meaningful factual differences among Kutner's affidavit, Colony's log, and the operative complaint. The log created on June 13, 2017, is written in the third person by a Colony claims examiner and states: "[A]s [Kinman] attempted to take the phone [Kutner] grabbed [Kinman's] wrist and he fell out of his wheelchair because he was not wearing a seatbelt." In his February 2, 2018 affidavit, Kutner attested in part: "I attempted to alter [Kinman's] wheelchair's course by grabbing [Kinman] and his wheelchair and moving them to the side." The essential conduct described in each of the documents is similar to that alleged in the complaint. As set forth in part I of this opinion, however, we have determined that the claims nevertheless fall within the policy's exclusions provision. As a result, we conclude that the court did not improperly confine its analysis to the operative complaint and that, even if it did, the documents at issue would not alter the outcome in this matter.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Dennis Kinman was originally named as a defendant in the declaratory judgment action.

[2] Lift-Up and Kutner were defendants in the personal injury action and plaintiffs in the declaratory judgment action, but they have not participated in the present appeal.

[3] See *Kinman* v. *Kutner*, Superior Court, judicial district of Danbury, Docket No. CV-17-6021988-S.

[4] The Kinmans listed the following issues in their appellate brief: whether the court erred in "(1) determining that the negligent conduct described in counts one and two of the operative complaint could not, even possibly, be considered an accident that arose out of Lift-Up's garage operations; (2) determining that all of the negligent conduct described in counts one and two of the operative complaint constitutes either an assault, a battery, or an assault and battery; (3) restricting its analysis to the allegations in the operative complaint and rejecting the evidentiary significance of two pieces of extrinsic evidence that support Colony's duty to defend Lift-Up; (4) determining that no allegation in the operative complaint falls even possibly within Colony's insurance coverage thus triggering its duty to defend Lift-Up; [and] (5) basing its ruling on allegations of intentional and/or reckless conduct—properly pleaded in the alternative in counts three through five of the operative complaint and irrelevant to Colony's duty to defend its

insured—to determine that allegations in the negligence counts fall outside Colony's insurance coverage."

[5] The coverage provision of the policy is in Section II and states in relevant part:

"A. Coverage

"1. 'Garage Operations'—Other Than Covered 'Autos'

"a. We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.'

"We have the right and duty to defend any 'insured' against a 'suit' asking for these damages. However, we have no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may investigate and settle any claim or 'suit' as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance—'Garage Operations'—Other Than Covered 'Autos' has been exhausted by payment of judgment or settlements."

[6] The Kinmans do not allege a motive or reason for why Kutner grabbed Kinman to alter the path of the wheelchair. At oral argument in this appeal, counsel for both parties agreed that self-defense had not been alleged and that separate provisions of the policy pertaining to claims arising from the use of force in defense of persons or property do not apply.

[7] The March, 2017 complaint alleged negligence, intentional assault, reckless and wanton misconduct, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of warranty.

[8] In his affidavit, Kutner attested that he was a defendant in a criminal matter and in a civil matter that arose out of the same occurrence. He further attested to the verbal disagreement between him and Kinman that he escalated by slapping Kinman's baseball cap from his head. Amy Kinman was recording the incident on her cell phone, which he grabbed and threatened to " 'break this fucking thing right now.' " Kinman attempted to retrieve the cell phone from him and moved his wheelchair toward him. He attempted to alter the course of the wheelchair by grabbing Kinman and his wheelchair and moving them to the side. He further attested that he caused Kinman to fall from his wheelchair. More particularly Kutner attested:

"As someone who performs services for disabled customers on a regular basis, I knew or should have known of [Kinman's] limitations and susceptibility to injury, and I should have considered this factor when I pushed him and his wheelchair, but I did not do so. I *did not expect or intend any harm* to [Kinman] when I diverted his wheelchair, but I knew or should have known of a serious risk of injury resulting from [Kinman's] inability to stabilize or brace himself when I pushed his wheelchair. I regret the injuries suffered by [Kinman] and the distress to Amy Kinman.

"As a condition of my application for and completion of the Accelerated Pretrial Rehabilitation Program, I agree to make . . . restitution to [Kinman] for the injuries that resulted from my careless conduct." (Emphasis added.)

[9] The operative complaint sounded in eight counts: Kinman's claim of negligence as to Lift-Up; Kinman's claim of negligence as to Kutner; Kinman's claim of intentional assault as to Kutner; Kinman's claim of reckless and wanton misconduct as to Kutner; Kinman's claim of intentional infliction of emotional distress as to Kutner; Kinman's claim of negligent infliction of emotional distress as to Kutner and Lift-Up; Amy Kinman's claim of bystander emotional distress as to Kutner and Lift-Up; and Amy Kinman's claim of loss of consortium as to Kutner and Lift-Up.

[10] The court, *Mintz*, *J.*, rendered judgment in accordance with the stipulation.

[11] We note that exemplary damages are not available for simple negligence claims. See *Berry* v. *Loiseau*, 223 Conn. 786, 811, 614 A.2d 414 (1992) (award of exemplary damages requires evidence of reckless indifference to rights of others or intentional and wanton violation of those rights).

[12] General Statutes § 38a-321 provides in relevant part: "Upon the recovery of a final judgment against any person, firm or corporation by any person . . . for loss or damage on account of bodily injury . . . if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action

could have enforced his claim against such insurer had such defendant paid such judgment."

[13] The March 29, 2019 counterclaim omitted any counts with respect to Kutner because, in accordance with the terms of the stipulated judgment, the Kinmans' amended complaint sought to recover from Colony only the $850,000 stipulated judgment entered against Lift-Up.

[14] In their appellate brief, the Kinmans state that counts three through five of the operative complaint in the personal injury action, which allege intentional and wanton acts, are not relevant to the issues on appeal. We consider any claims as to those counts abandoned.

[15] Count two of the operative complaint in the personal injury action, titled "Plaintiff Dennis Kinman's Claim of Negligence as to Bruce Kutner," is similar to count one, but omits the allegations concerning the events preceding the date on which the Kinmans sustained injuries. It also omits the allegation that Kutner slapped Kinman's baseball cap off his head.

[16] The exclusions provision of the policy is set forth in Section II of the policy and an endorsement. The endorsement states: "This endorsement modifies insurance provided under the following . . . GARAGE COVER-AGE FORM . . . ."

"SECTION II—LIABILITY COVERAGE, B. Exclusions is amended and the following added . . .

"19. Assault, Battery, or Assault and Battery

" 'Bodily injury,' 'property damage' or 'personal and advertising injury' *arising out of*:

"a. 'Assault', 'Battery' or 'Assault and Battery' caused, directly or indirectly, by you, any 'insured', any person, any entity or by any means whatsoever . . . ." (Emphasis added.)

[17] Section II.A.1.a. of the policy provides in relevant part that Colony "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' . . . ." Section VI.A. provides that " 'Accident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.' " Section VI.H. of the policy defines " 'Garage operations' " as "the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. 'Garage operations' includes the ownership, maintenance or use of the 'autos' indicated in Section I of this coverage form as covered 'autos'. 'Garage operations' also include all operations necessary or incidental to a garage business."

[18] In their brief, the Kinmans argue that because the policy defines a battery as " 'an intentional or unintentional act, including . . . any actual harmful or offensive contact between two or more persons' " but fails to define the terms " 'harmful or offensive contact,' " the entire definition of a battery is ambiguous "because no reasonable insured would believe that his taking steps to avoid a collision . . . could possibly constitute 'harmful or offensive contact.' "

[19] As set forth in footnote 6 of this opinion, counsel for both parties agreed that self-defense was not alleged as a motive for Kutner's act of grabbing Kinman and the wheelchair.

[20] The Kinmans also argue that the court did not properly consider in isolation their allegations of negligence, but rather focused on their alternative allegations of intentional or reckless conduct and, as a result, deprived them of their right to plead in the alternative and to have their negligence claim decided by a jury. These arguments warrant little further discussion. Pursuant to our plenary review, we have read the operative complaint broadly with attention to the general theory on which the Kinmans proceeded against Lift-Up and Kutner. We cannot say that the court "cherry-picked" the allegations of the operative complaint looking only for nonnegligent and/or assaultive types of behavior and ignored the claimed negligent acts. The theory and language of *each* count of the operative complaint broadly read demonstrates that Kinman's injuries *arose out of* Kutner's progressively more aggressive acts of hostility toward the Kinmans. Consequently, the court did not deny the Kinmans their right to plead alternative causes of action or the right to have the case decided by a jury. Our law provides that it is not the label affixed to the cause of action that controls an insurer's duty to defend. Rather, the duty to defend is predicated on the underlying facts alleged in the complaint. See *Smedley Co.* v. *Employers Mutual Liability Ins. Co. of Wisconsin*, 143 Conn. 510, 516, 123 A.2d 755 (1956). We conclude that there is no disputed material fact for a jury to resolve.

[21] The procedural posture in *Misti* is distinguishable from the present

case. In *Misti*, the parties "stipulated to a number of undisputed facts regarding the circumstances surrounding [the victim's] injuries . . . ." *Misti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 162. In the present case, the parties have not stipulated to any facts underlying Kinman's injury.

———————————————